The defendants appealed from the order confirming the report of the referee, and giving the plaintiff leave to enter judgment on the report, to the general term of the court.

*Joseph Mason,* for the appellants.

*J. Sterling Smith,* for the respondent.

HELD, *by the Court,*[*] that the justice, at special term, could not do otherwise than confirm the report of the referee and give the plaintiff leave to enter judgment thereon. Also, that the defendants could appeal from the judgment to the general term; and that it was proper, or at least matter of discretion, for the justice at special term to grant leave to the defendants to except to the report of the referee, and make a case and exceptions that should form part of the judgment-roll, so that they could review the decisions of the referee by an appeal from the judgment.

The court affirmed the special-term order, with $10 costs, and gave the defendants leave to file exceptions to the report of the referee, *nunc pro tunc,* and time to make a case and exceptions.

---

## THE PEOPLE *a.* POWELL.

*Court of General Sessions of New York, April,* 1862.

COURTS OF SESSIONS.—POWER TO GRANT NEW TRIAL.

The Court of General Sessions of the city and county of New York have power to grant new trials upon the merits, and on the ground of newly-discovered evidence. The act of 1859 (*Laws of* 1859, ch. 339, § 4)—which grants to the Courts of Sessions of the several counties of the State the power to grant new trials—extends to the Court of General Sessions in the city and county of New York.
The history of Courts of Sessions, considered.

Motion for a new trial.

---

[*] Present, BALCOM, CAMPBELL, PARKER, and MASON, JJ.

The facts are stated in the opinion of the court.

*Charles S. Spencer,* for the motion.

*A. Oakey Hall,* district-attorney, opposed.

HOFFMAN, RECORDER.—The prisoner, Joseph Powell, having been convicted of grand larceny at the February (1862) term of this court, his counsel has moved the court to grant a new trial upon the merits, and on the ground of newly-discovered evidence. The motion is made under section 4 of chapter 339 of the Laws of 1859, which section is as follows, viz.:

"The Courts of Sessions of the several counties in this State shall have power to grant new trials upon the merits, or for irregularity, or on the ground of newly-discovered evidence, in all cases tried before them."

The district-attorney opposes the motion, and insists that the section of the act just quoted has no application to this court. He argues that this is the Court of General Sessions of the Peace, in and for the city and county of New York; that it is an ancient court having an ancient title; that it is differently organized from Courts of Sessions in the other counties; that it has more extensive powers, and a clerk of its own, &c.; that the term "Court of Sessions," contained in the act just quoted, applies only to courts bearing that name organized in other counties in the State under section 14 of article 6 of the Constitution of 1846; and that, even if the expression "Courts of Sessions" is comprehensive enough to include this court, it is apparent from the entire act, as well as from the act of April 17, 1847, which it in part repeals, that the Legislature did not intend its provisions to apply to it.

This court, under its former judges, has acted upon the assumption that it had the power, under the act of 1859, to grant new trials, and has, I believe, exercised the power; and the right has, I am informed, never before been disputed. If, therefore, the present objection is well taken, it overthrows the established practice of the court. I now propose to examine it carefully, and with as much brevity as is consistent with its importance, and the interest which it has excited among those who are accustomed to practise here.

The first question is, "Is the term 'Courts of Sessions' in the

act of 1859 comprehensive enough to include the Court of General Sessions, &c., in and for the city and county of New York?"

Courts of Sessions as such are of very ancient date. The literal signification of the word "Sessions" is sittings.

The learned Dr. Johnson, in his dictionary, defines Sessions to be "a meeting of the justices, as, Sessions of the Peace."

In Jacob's Law Dictionary is the following definition: "Sessions of the Peace,—a court of record held before two or more justices of the peace for the execution of the authority given them by their commission and certain acts of Parliament, and the justices of the sessions have power to hear and determine trespasses against the public peace, and many offences by statute."

Bacon, in his Abridgment, title "Courts of Sessions, &c.," says: "Sessions holden for the general execution of the authority of the justices of the peace, and which are usually holden in the four quarters of the year, are called 'General Sessions;' and Sessions holden on a special occasion for the execution of some particular branch of the authority of justices of the peace, are called 'Special Sessions;'" and he proceeds to state in regard to the organization of such courts as follows: "By statute, 34 Eliz., 3, ch. 1, it was enacted that two or three of the best reputation in the counties shall be assigned keepers of the peace by the king's commission, and at what time need shall be, the same, with others wise and learned in the law, shall be assigned by the king's commission to hear and determine trespasses and felonies done against the peace in the same counties, and to inflict punishment, &c."

Chitty, in his Criminal Law (vol. 1, ch. 4, pp. 133, 134), says: "The term Sessions of the Peace is used to designate a sitting of justices for the execution of those purposes which are confided to them by their commission and by several acts of Parliament; of these Sessions there are four kinds—Petit, Special, Quarter, and General." The same author says in another place: "The Sessions for the county of Middlesex and the cities of London and Westminster were governed by regulations differing in some respects from those which prevailed in other parts of the kingdom." I have quoted thus much from old authors for the purpose of showing two things: 1, the origin of Courts of Sessions and character of early legislation relating thereto, bearing,

as it does, so great a similarity to modern legislation; and 2, the fact, that while all these courts, in whatever part of the kingdom they were situated, were spoken of and legislated about as Courts of Sessions, those in cities were under different regulations in some respects from those in other parts of the kingdom; just as Courts of General Sessions in the city of New York, under the former Constitution, were differently constituted and in some respects differently regulated from the Courts of General Sessions in the other parts of the State; and just as this court under the present Constitution is differently organized, and in some respects differently regulated, from Courts of Sessions in other parts of the State.

This court, now called the "Court of General Sessions of the Peace in and for the city and county of New York," assimilates in its character, jurisdiction, &c., to the English Courts of Sessions as above described, and is, whatever may be its peculiar designation, a "Court of Sessions." It originated with the Dongan charter (of 1686), which in section 8 declared, that the mayor and recorder, and three or more aldermen, not exceeding five, should be justices and keepers of the peace, &c., &c., and that they, or any three or more of them, whereof the mayor and recorder, or one of them, should for the time being be one, should have power, &c., to hear and determine, &c., all trespasses and offences whatsoever in said city of New York. It will be perceived that the charter gave no particular name to the court so constituted, but it was, in fact and in law, a Court of Sessions of the Peace, held in and for this city and county.

By the Montgomery charter (1730), (see section 26), it was provided that the mayor, deputy-mayor, recorder, and aldermen of said city for the time being, or any four or more of them, whereof the mayor, deputy-mayor, or recorder shall be one, shall, and may forever hereafter, hold and keep four Courts of General Sessions of the Peace in and for the said city and county of New York, to begin at certain times in the year, to wit, the first Tuesday of November, February, May, and August; and jurisdiction was given them of all manner of felonies, &c. Let me here remark, that these courts so authorized were, like the Courts of Quarter Sessions in England, so called because held in each of the four quarters of the year. The charter does not create one court to be called "the Court

of General Sessions of the Peace in and for the city and county New York," but merely authorizes certain persons to hold four Courts of General Sessions of the Peace in and for the city and county; that is, it provides for the holding of a Court of General Sessions in that city and county four times a year. Kent, in his notes to the charter, says, "A succession of statute regulations have entirely superseded this section of the charter, and new-modelled the courts and enlarged their jurisdiction." He then cites the laws of 1787, 1788, 1798, 1800, &c., &c., and the act of April 9, 1813. By reference to the last act (1813), we see section 8 authorizes certain officers to hold "Courts of General Sessions of the Peace in the said city and county." Section 9 speaks of Courts of General Sessions of the Peace in and for the city and county of New York. Section 10 says the said court of "General Sessions" shall do certain things, &c.

The Court of General Sessions in this city and county has assumed the title which it now bears, and which it is claimed was derived from the Montgomery charter, but which (it is clear, on reference to said charter, and the acts just cited), when analyzed, means nothing more than that it is a Court of General Sessions, and that it is held in and for the city and county over which its jurisdiction extends, just as (as we shall hereafter see) under the Constitution of 1821 there were Courts of General Sessions held in and for the county of Westchester, &c., or the county of Orange, &c.,—all of them being Courts of Sessions held in and for their respective counties.

Having taken this review of the origin and character of the Courts of Sessions, and of the origin of the Court of Sessions in and for this county, let us glance at some of the legislation under the Constitution of 1821 relating to Courts of General Sessions, and see whether, in any thing which relates to the character of the courts, any distinction has been taken, and whether the Legislature in any way indicated that any act relating to Courts of General Sessions, *eo nomine,* would not as well apply to this court as to the Courts of General Sessions in any other part of the State.

By the Revised Statutes (see 3d edition, top paging 274), any three judges of the County Courts of each of the counties of the State, except the county of New York, were empowered to hold Courts of General Sessions in their respective counties; and the

statute then proceeded to enumerate the powers of such court. It, among other things, provides that the clerks of the several counties (except the city and county of New York) shall be the clerks of the Courts of General Sessions.

Then on page 288 (same volume), it provided that the first judge of the County Courts of the city and county of New York, and the mayor, recorder, and aldermen of said city, or any three of them, &c., of whom the first judge, mayor, or recorder should always be one, should have power to hold " Courts of General Sessions" in and for the said city and county of New York: that said court should possess like powers with " Courts of General Sessions" for the other counties in the State (and when the first judge should preside, certain additional powers).

The clerk of the Court of Oyer and Terminer and General Sessions of the Peace in and for the city and county of New York was appointed by, and held his office at the pleasure of, the said Court of General Sessions of the Peace in that city. (1 *Rev. Stat.*, 3d ed., 111.)

Two things should be noticed in this connection: 1st. The different organization of the General Sessions in New York and in the other counties, as to judge, clerk, &c.

2d. The fact that the court in New York is called in one place (*Rev. Stat.*, 288) the Court of General Sessions in and for the city and county of New York, and in the other place (1 *Rev. Stat.*, 111) by its more full title of Court of General Sessions of the Peace in and for the city and county of New York,—the Legislature having here used, as they have repeatedly used since, the expressions indiscriminately.

Now if, under this state of law, an act had been passed authorizing Courts of General Sessions in the several counties in the State to grant new trials, &c., would it have been claimed that such an act did not, by its very terms, entitle the Court of General Sessions, as organized in the city and county of New York, as well as Courts of General Sessions in and for the county of Westchester, &c., and any in other parts of the State? I think not. And yet the same arguments used now would have been applicable then, viz.: That the court here was differently constituted from what it was in other counties, and that it had enlarged powers; that it had a clerk of its own, and had a distinct name derived from the Montgomery charter, viz.: The

Court of General Sessions of the Peace in and for the city and county of New York. The answer to this would have been, that it was, nevertheless, a Court of General Sessions, nothing more and nothing less, and would be included in any general legislation relating to courts by that name.

We will pass over much of the legislation relating to these courts, and only say that thus the law was, in substance, when the Constitutional Convention of 1846 assembled; and it is under the Constitution of 1846 that the district-attorney now claims that new courts, called "Courts of Sessions," were created in counties other than New York, as contradistinguished from the Court of General Sessions in that city and county, and which new courts alone are affected by legislation relating to Courts of Sessions *eo nomine.* Is this so? Let us look, first, at the proceedings of the convention which framed the Constitution, and at the instrument itself; second, at legislative interpretation of it since.

First, then, as to the proceedings of the convention which framed the Constitution of 1846, and the Constitution itself.

It may be premised, that the great object of Courts of Sessions was then, as it is now, to relieve the Oyer and Terminer of a large amount of criminal business, just as the object of county and other local courts was to relieve the Supreme Court of civil business. In the convention, several different plans of a judiciary system were submitted by as many different members of the Committee on the Judiciary. After much discussion of the various plans, Mr. Crooker, of Cattaraugus county, on the 19th of August, submitted certain additional sections to the report of the Judiciary Committee, providing for the organization of County Courts, &c. One section was as follows: "There shall be elected in each of the counties of the State, except the city and county of New York, a county judge, &c.;" and in another section it was provided as follows: "The county judge, with two justices of the peace, to be annually designated by the Board of Supervisors, shall hold Courts of General Sessions for the trial of all offences punishable by imprisonment in the state-prison for a term not exceeding ten years, &c." The proposition was the basis of the present system of County Courts and Courts of Sessions in counties other than the county of New York. Mr. Jordan, in an able speech, favored this

plan, assigning, among other reasons, that the majority of the committee had not provided for any court of criminal jurisdiction except the Oyer and Terminer, and he was fully satisfied that with the aid proposed by Mr. Crooker to relieve the Supreme Court of "Sessions business" (mark the language, "Sessions business"), the judges of the Supreme Court would be, amply able to do all the other business of the court. (*Croswell & Sutton's Debates of Convention*, 512, 514.) Mr. Jordan subsequently (see *Ib.*, 555) indicated an amendment he desired to offer, viz., to leave the jurisdiction of the Court of General Sessions more to the control of the Legislature.

Subsequently, Mr. Swackhammer, of New York (*Ib.*, 596), asked Mr. Crooker in debate why, in providing for the election of a county judge, he excepted the county of New York. Mr. Crooker responded, that one judge would not be sufficient for New York, and he intended to make provision for such cities in a subsequent section.

The question and answer are worthy of note, because provision was made for New York in a subsequent section, and not another word was dropped in this debate indicating any intention of making any distinction between New York and the other counties, except this declaration, that more judicial force would be required in New York to organize the same character of courts, and do the same class of business. After considerable debate Mr. Crooker's proposition, with some alteration, was adopted. Mr. Jordan's amendment, as above suggested, was embraced in it, and the section relating to Courts of Sessions read as follows: "The county judge, with two justices of the peace, may hold 'Courts of Sessions' with such criminal jurisdiction as the Legislature may prescribe." It will be perceived that the word "General" before "Sessions" was dropped; why it was dropped does not appear, as no allusion whatever was made to it in the debate. It is enough to know, that the effect of the section was not in direct terms to establish a court of that particular name, but to authorize certain judges, in counties other than New York, to hold Courts of Sessions for the transaction of criminal business, in place of the old Court of General Sessions, as provided for by law, under the Constitution of 1821; and the omission to use the word "General" was not for any especial reason, but because, in the connection in which

the words were used, Sessions and General Sessions meant the same thing.

So much for the proceedings of the convention up to this point. On this question New York city and county yet remained to be provided for, and it was done by section 12 of the last article of the Constitution, which is as follows:

"All local courts established in any city or village, including the Superior Court, Common Pleas, *Sessions*, and Surrogate's Courts of the city and county of New York, shall remain, until otherwise directed by the Legislature, with their several powers and jurisdiction, &c., &c." Observe, it does not say, "The Court of General Sessions of the Peace in and for the city and county of New York;" but merely, "Sessions." The same word exactly as is used in the prior section in relation to other counties. This identity of language is remarkable, if it was intended to recognize or create any distinction in character between this Court of Sessions and Courts of Sessions in other counties. It seems clear to me such was not the intention, but that they were all considered courts for the transaction of Sessions business; and, whether in city or country, were included in the general term of "Courts of Sessions," with such powers as the Legislature might confer.

But the learned district-attorney urges the differences which actually exist, as we have before mentioned. He says this court is differently constituted from Courts of Sessions in the other counties, that it has a clerk of its own, and a name peculiar to itself. So is the Oyer and Terminer in this city and county differently constituted from what it is in other counties. Here it is held by a single judge of the Supreme Court; elsewhere, by a judge, aided by the county judge and two justices of the Sessions, or any two of them, of whom the Supreme Court judge must be one. Here it has a clerk of its own; elsewhere, the clerk of the county is the clerk of the Oyer and Terminer. Here it is frequently spoken of by the Legislature as the Court of Oyer and Terminer in and for the city and county of New York. Yet I do not believe it would be contended that an act, authorizing Courts of Oyer and Terminer in the several counties of this State to grant new trials, would not apply to the city and county of New York as well as other counties; and as to the peculiar and ancient title of the court, we

have seen that it was not always so designated by the Legislature, prior to 1846; that it is not preserved *eo nomine* by the Constitution of 1846 ; and we shall show directly that it is not always so designated in subsequent legislation, even when applied to it especially, either in the Charter of 1857 or in other acts.

It is undoubtedly true that there has been considerable legislation in regard to this court specifically, and that it is frequently and generally, though not always, spoken of in acts of the Legislature as " The Court of General Sessions of the Peace in and for the city and county of New York." I think, however, nothing can be argued from that. In the Charter of 1857, § 48, the court is spoken of simply as what I have attempted to show it to be—a " Court of General Sessions," nothing more or less. That section provides " that no alderman shall hereafter sit or act as a judge of the Court of Oyer and Terminer, or in the Courts of General or Special Sessions in the city and county of New York." And it further provides, that " the Court of General Sessions in and for the said city and county may be held by the recorder or city judge. In neither of these provisions is this court spoken of by the especial title of " The Court of General Sessions of the Peace in and for the city and county of New York."

In the Judiciary Act of 1847, to which the district-attorney has referred as supporting his views, it is, among other things, provided as follows (§ 112) : " Courts of Sessions, except in the city and county of New York, shall be held at the time and place at which County Courts for the trial of issues of fact are appointed to be held," &c. Now, if there was no " Court of Sessions," in the city and county of New York, this exception was wholly unnecessary and without meaning. If there was a Court of Sessions, it must have been this court, which alone answers the description.

Again, in the Code of Procedure adopted in 1848 (*Laws of* 1848, 497, § 9), the Legislature declared what courts of justice existed in this State, and also declared that the courts there mentioned should continue to exercise the powers then vested in them respectively, except as otherwise prescribed by the act. The following are the courts thus declared by the Legislature to exist in the State, viz., the Court for the Trial of Impeach-

ments, the Court of Appeals, the Supreme Court, the Circuit Court, the Court of Oyer and Terminer, the County Courts, the Courts of General Sessions of the Peace, the Courts of Special Sessions, the Surrogates' Courts, the Courts of Justices of the Peace, the Superior Court of the City of New York, the Court of Common Pleas for the City and County of New York, the Mayors' Courts of Cities, the Recorders' Courts of Cities, the Marine Court of the City of New York, the Assistant Justices' (District) Courts in the City of New York, &c. Now, it will be recollected, this was only two years after the formation of the Constitution of 1846, and yet no mention is here made at. all of Courts of Sessions, *eo nomine;* on the contrary, the words are " General Sessions of the Peace." And the same designation is kept up in section 38, which provides " that no grand or petit jury shall be summoned for any court of ' General Sessions of the Peace,' except in the city and county of New York, unless so directed by the Board of Supervisors of the county."

In 1849 the Code was amended, and in the section declaring what courts exist in the State, the words " Courts of Sessions" are substituted for " Court of General Sessions of the Peace." No mention whatsoever is made of this court by name, although all the other courts in this city are named specifically.

Can it be the Legislature intended to ignore the existence of this court? Certainly not. But it was recognized in the general designation of " Courts of Sessions," and thus declared it to be what I have attempted to show it to be, a " Court of Sessions," nothing more and nothing less. The Legislature having thus in effect declared this court to be included in the class of " Courts of Sessions," and the act containing that declaration being in full force, how can it be claimed that in subsequent legislation relating to Courts of Sessions (without exception), this court is not included?

Certainly such a proposition cannot be maintained, unless there is something in the particular act itself which shows an intent to except this court from its provisions. And here I may say that the learned district-attorney has substantially admitted the truth of this proposition in one of his points, in which he refers to the act of the Legislature, passed April 9, 1859, entitled " An Act to empower Courts of Sessions in the several counties of the State to extend their terms, and authorizing

certain adjournments of such courts," and which, among other things, declares as follows :

"Section 1. It shall be lawful for the Court of Sessions of any county of this State to continue its sittings at any term thereof as long as it may be necessary, &c."

This court has always assumed that this act applied to it, and has accordingly continued its sittings from time to time in accordance with its provisions, and, I think, properly so.

Now, in regard to this act, the district-attorney says : "When called upon in this county to find a Court of Sessions, lest the statute fail and its object fail, the Court of General Sessions of the Peace in and for the city and county of New York may be and must be seized upon."

I repeat, that I take this proposition as admitting that the term "Courts of Sessions" is comprehensive enough to include this court. The district-attorney says, that in the act last mentioned the words "any county" are used, and that any means every; while in the New Trial Act the words are, "the Courts of Sessions of the several counties;" that is, he says, the counties in which the "constitutional Courts of Sessions exist." I am unable to see any force in this distinction. The Legislature has not made any, for I notice that in the title of the Term Extension Act the Legislature uses the words "several counties," although in the body of the act they say "any county." The truth is, that Courts of Sessions, "Courts of General Sessions," and Courts of General Sessions of the Peace, are expressions all of which designate the same class of courts; and, as it was remarked by Judge Gridley in the case of The People a. Hawkins (5 How. Pr., 1), "A few citations from our statutes will show how unimportant the exact or more uniform designation of courts has always been deemed in this State." Thus, in the Constitution of 1777, the Supreme Court of Judicature is designated simply as the Supreme Court. In the statutes it is called the Supreme Court, the Supreme Court of Judicature, the Supreme Court of Judicature of the People, &c. In the Constitution of 1821 it was designated as "the Supreme Court," simply. In one place in the Revised Statutes it was called "The Supreme Court of Judicature;" in another place, process was made returnable before "The Justices of our Supreme Court of Judicature;" and in another case it was provided, that in all pleadings

and records the style should be "before the Justices of the Supreme Court of Judicature of the People of the State of New York." In the case of The People *a*. Hawkins (*supra*), Judge Gridley, of the Supreme Court, decided that a bond conditioned for the appearance of one Clark at the next Court of General Sessions of the Peace (instead of Court of Sessions), to be held in Oneida county, was forfeited by the non-appearance at the next "Court of Sessions;" and this case is cited with approval in Baldwin *a*. McArthur (17 *Barb.*, 414).

Let us now consider the second question, viz.: Is there any thing in the act itself now under consideration which indicates an intention on the part of the Legislature to exclude this court from its application?

Much has been said against the policy of conferring upon criminal courts the power to grant new trials upon the merits. There are certainly many reasons against it, and much may be said on both sides. But I can see no good reason, if the power is to be given at all, why it should not be given as well to this court as to any Court of Sessions in the State. But it is claimed, that it is apparent from the act itself that it was not intended to embrace this court in its provisions, because, 1st. The act of April 17, 1857, which it in fact repealed, had especial reference to courts out of the city and county of New York, &c.; 2d. Because some parts of the act itself are wholly inconsistent with the idea that it was intended to apply to this court.

It is not so clear that the provisions of the act of 1857, relating to "Courts of Sessions," did not, whenever the same could be applied, embrace this court. The title of the act of 1857 is important in this connection. It is an act "defining the powers and duties of Courts of Special Sessions, except in the city and county of New York and the city of Albany, and Court of Sessions, and regulating appeals in criminal cases." The exception in the title, it will be observed, applies only to the Courts of Special Sessions. Then in its first section it continues this exception thus: "Courts of Special Sessions, except in the city and county of New York and Albany," shall have power, &c. The same exception is kept up in the second section. It is dropped in the third section, which is as follows: "The Courts of Sessions of the several counties in this State, in addition to the several powers now possessed, shall have the following powers,"

&c., among others, the power to grant new trials. Now, it is evident it was not intended to limit this section to the particular counties, the Special Sessions in which had been treated of in prior sections; if it had been the same, exception would have been noted. The argument that no constitutional Court of Sessions existed in New York, and therefore no exception was necessary, would not apply to the county of Albany, in which said constitutional court did exist; and the exception of that county in terms was necessary, if the Legislature intended to except it from this provision, as it did from the provisions relating to "Special Sessions." I do not hesitate to say that so much of the act of 1857, as authorized Courts of Sessions in this State to grant new trials on the merits, applied to and embraced this court. All of that act, however, except so much thereof as defines the powers, &c., of Courts of Special Sessions in counties, except New York and Albany, has been repealed by the act of 1859, under the last section of which this motion is made, and which section I quoted in the first part of this opinion. This act of 1859 is entitled "An Act in relation to Courts of Special Sessions, Courts of Sessions, and Police Courts." In this title, it will be perceived, no "exception" is contained. The first section repeals all the act of 1857, just referred to, except the first and second sections, which two sections, be it remembered, are those which define the powers of Special Sessions, except in New York and Albany. The act of 1857 contemplating no exception except in its provisions relating to the powers of Special Sessions, and those provisions being retained, there was no further necessity of noting any exception of New York or Albany in the act of 1859, and that act, therefore, neither in its title or its sections, makes any exception of any courts whatever in terms. And the only thing upon the face of this act which shows it in any way inapplicable to this court is, that section 3, relating to certioraris to Courts of Special Sessions, declares that the writ, affidavit, and return shall be filed in the office of the county clerk, he being clerk of sessions in counties other than this; whereas it should have been in case of a certiorari from this court, if the section was intended to apply to it, filed in the office of the clerk of this court.

Whether this omission is to be construed as indicative of an intent to except this court from the operation of that section, or

whether it is one of those blundering omissions not uncommon in the history of legislation, is questionable. If it was intended as an exception, I can only say it would have been much easier to have made the exception in plain words.

I do not, however, consider it important, for the fourth section stands by itself, and does not depend, in any sense, upon the others for its force or construction. It declares that Courts of Sessions of the several counties in this State (no exceptions) shall have power to grant new trials, &c.; and if I am right in my conclusion, that the words " Courts of Sessions" are broad enough to include this court, it is plain enough, to my mind, that there is nothing in the act itself to exclude it.\*

I will, therefore, hear counsel upon the merits of this motion.

---

\* In the MATTER of MARKS (*Supreme Court, First District, Sp. T., February,* 1862), a contrary view of the question was suggested.

That was a case of an application for a certiorari and habeas corpus to the Special Sessions, under the act of 1859, ch. 339; the second and third sections of which, relating to certiorari, are above referred to. The application was refused, on the ground of doubt as to the construction of the statute.

The opinion rendered was as follows:

CLERKE, J.—To say the least, very great doubt exists whether the act of 1859 (ch. 339) applies to the New York Courts of Special Sessions and the Court of General Sessions of the Peace in and for the city and county of New York. The latter is a court created by the Montgomery charter; in the Constitution of 1821 it is specifically recognized. By the Constitution of 1846, courts of criminal jurisdiction in counties are termed Courts of Sessions, and are composed, by a provision of that Constitution, of a county judge and two justices of the peace, and the county clerk is *ex officio* the clerk of the Sessions; whereas the Court of General Sessions for the city and county of New York is composed of one judge (either the city judge or recorder), specially elected for that purpose alone, and has a clerk specially appointed. This distinction has been frequently recognized by the courts; and now, as well as when the case of The People *a.* Goodwin (18 *Johns.,* 206) was before the Supreme Court, is clothed with powers not intrusted to the Sessions of any other county. I therefore think it would be unwise for a justice of this court to grant a certiorari and take a recognizance in a case of this description.

We certainly have business enough without assuming doubtful powers or jurisdiction. This is more especially inexpedient, when we consider that a party convicted at the Special Sessions can have his case reviewed in the General Sessions without our intervention. He may appeal to the Court of General Sessions, as prescribed by the article relative to trials before Courts of Special Sessions in the city and county of New York. (3 *Rev. Stat.,* 5 ed., 1009, § 52.)

The writs of certiorari and habeas corpus must be, therefore, quashed, and the prisoner remanded.

This decision is made without prejudice to the right of the prisoner to apply to the Court of General Sessions for a writ of certiorari, &c.