---

PEOPLE ex rel. SMITH v. McFARLANE, Sheriff.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. BASTARDS—COMMITMENT—INVALID WARRANT—HABEAS CORPUS.

Code Cr. Proc. § 851, provides that on an order of filiation in bastardy the defendant must pay the costs of arrest and order of filiation, and give an undertaking for the child's support, etc., or to appear at the next term of the county court. Section 852 declares that on his failure so to do the magistrates shall commit him to the county jail until discharged by the county court, or on delivery of a proper undertaking; and section 861 authorizes an appeal from the order of filiation to the county court. *Held*, that since the authority for imprisonment on failure to give an undertaking was the order of filiation, and the commitment order simply authorized the keeper of the county jail to hold relator until he should give a proper undertaking, or be legally discharged, a defendant failing to give an undertaking or take an appeal was not entitled to be released on habeas corpus because the commitment warrant erroneously directed that he be restrained until he should execute a bond for his appearance at the next court of sessions, instead of the county court.

2. SAME—RESTRAINT—NEW WARRANT.

Code Cr. Proc. § 852, requires magistrates making an order of filiation in bastardy to commit the defendant to the county jail until he be discharged by the county court, or until he deliver an undertaking for the appearance, etc. *Held*, that the fact that a defendant was committed on a defective warrant did not deprive the magistrates committing him of power to restrain him by virtue of a valid warrant subsequently executed.

Appeal from special term, Wyoming county.

Habeas corpus by the people, on relation of George C. Smith, against James A. McFarlane, sheriff of Wyoming county, to obtain relator's release from a judgment in bastardy proceedings. From an order discharging relator, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

G. S. Van Gorder, for appellant.
Irving Botsford, for respondent.

LAUGHLIN, J. On the 30th day of October, 1899, two justices of the peace of the town of Pike made and signed an order of filiation against the relator pursuant to the provisions of section 850 of the Code of Criminal Procedure. This order is in all respects a

full and complete compliance with the requirements of said section. The proceeding had been theretofore duly instituted, and a hearing duly had before the two magistrates, in conformity with the provisions of chapter 1 of title 5 of said Code, and the order was filed in the county clerk's office the same day. The relator having failed to comply with or enter into an undertaking as required by section 851 of the Code, the magistrates thereupon signed a warrant in the name of the people, addressed to any peace officer of the county of Wyoming, and to the keeper of the county jail, reciting that they had made the order of filiation; the facts necessary to confer jurisdiction to make the same; that the relator, being present, was required by them to pay the costs therein adjudged against him, and to enter into an undertaking with sureties to be approved by them for the performance of such order, or "his appearance at the next court of sessions of said county of Wyoming, to answer the charge, and obey its order therein, according to section 851 of the Code of Criminal Procedure of the state of New York"; and, after reciting that the relator had failed to pay the costs, and entered into the undertaking, it commanded the peace officer to take and convey and deliver him to the keeper of said jail; and it concluded by commanding the keeper of said jail as follows: "To receive the said George C. Smith into your custody in said jail, and there safely keep him until he shall pay the costs and execute such bond as aforesaid, or he be discharged by the court of sessions of said county." Pursuant to this warrant of commitment, the relator was on that day delivered to the sheriff of the county, who was the keeper of the county jail, and the warrant was left with the sheriff. The county judge granted a writ of habeas corpus on the petition of the relator on the 7th day of November following, returnable before him on November 15th. On the 9th day of November the sheriff received by mail a warrant, signed by the committing magistrates, in all respects the same as the original, excepting that "county court" was substituted for "court of sessions" in each instance where the latter was used. The sheriff returned that he held the relator at the time the writ was served on him under and by virtue of the original warrant. On the hearing before the county judge on the 15th of November, the original and corrected warrant, the order of filiation, the evidence and proceedings before the magistrates, and an affidavit showing that the order of filiation had not been appealed from, that on the hearing the relator declined to pay the costs or enter into an undertaking, and informed the magistrates that they could commit him to the jail, and that the jail in which the relator was confined was the only county jail of said county, were received in evidence. The county judge thereupon made an order discharging the relator from further imprisonment on the ground that his detention was illegal.

On and after the 1st day of January, 1895, by the amendment to section 14 of article 6 of the constitution adopted in 1894, courts of sessions, except in the county of New York, were abolished, and all their jurisdiction thereupon vested in the county court, and all actions and proceedings pending in the court of sessions were trans-

ferred to the county court. By amendments enacted in 1895, which took effect on January 1, 1896, "county court" was substituted for "court of sessions" in the various sections of the Code of Criminal Procedure relating to bastardy proceedings. The form of warrant employed by the magistrates in this case is the form which was in use prior to these changes in the law, the court of sessions having been theretofore specified in the sections of the Criminal Code relating to the undertaking and warrant of commitment. The question to be determined is whether, in view of the conceded validity of the order of filiation, the misnomer of the court in the original warrant rendered the relator's imprisonment illegal, and, if so, whether the corrected warrant made his detention thereafter lawful. Section 684 of the Code of Criminal Procedure provides as follows:

"Neither a departure from the form or mode prescribed by this Code in respect to any pleadings or proceedings, nor an error or mistake therein, renders it invalid, unless it have actually prejudiced the defendant, or tend to his prejudice in respect to a substantial right."

The relator has not been adjudged guilty of a crime, and, while these statutes attach a penal effect to a failure to comply therewith, they are remedial, and should be liberally construed, with a view to securing the indemnity to the public; that being the purpose for which they were enacted. Miller v. Baker, 42 Barb. 215; 3 Am. & Eng. Enc. Law (2d Ed.) 874; People v. Beehler, 63 Hun, 42, 17 N. Y. Supp. 418; People v. Crowley, 25 App. Div. 175, 49 N. Y. Supp. 214. When the order of filiation was made, it became the duty of the relator, under section 851 of the Code of Criminal Procedure, if he desired to give an undertaking, to tender an undertaking to the magistrates for their approval, for he had an election to make as to whether he wished to give an undertaking under subdivision 1, in which case he could only review that part of the order of filiation fixing the allowance to be paid (sections 861, 862, Code Cr. Proc.; People v. Dando, 20 Abb. N. C. 248); or under subdivision 2, in which case he could have reviewed the entire proceeding on the merits,—the undertaking in either case operating as an appeal. Section 852 of the Code of Criminal Procedure provides:

"Upon a compliance with the provisions of the last section, the magistrates must discharge the defendant; but otherwise they, or either of them, must, by warrant, commit him to the county jail, * * * until he be discharged by the county court of the county, or deliver an undertaking as prescribed in the last section."

This section does not require that the warrant shall recite the terms of the undertaking which the relator declined to execute, and, since it is made his express duty to enter into a proper undertaking, and not the duty of the magistrates to require it, we think no error can be predicated upon the recital in the warrant that he was required to execute an undertaking to answer to the court of sessions. The relator, having neglected to enter into a proper undertaking, could only review the order of filiation by taking an appeal therefrom to the next term of the county court, and this was expressly authorized by section 861 of the Code of Criminal Procedure. Had he desired to review the order, and taken

such an appeal, he would have been brought before the county court by virtue of such appeal, and not by virtue of the warrant of commitment. The office of the warrant of commitment was to hold him in custody until he should give the necessary undertaking, or be discharged by the court having jurisdiction to hear his appeal, should he take one, or to discharge him for other cause authorized by statute on an application to be duly made therefor by him. Notwithstanding the designation of the court of sessions, the county court was authorized to hear this matter, and to affirm or vacate the order, or to reduce or increase the sum ordered to be paid for the support of the illegitimate child or its mother, or to order the defendant's discharge where it appears that the public will not be put to any future expense. Sections 864–866, 880, Code Cr. Proc. The warrant was merely the authority of the keeper of the county jail to hold the relator until he should give an undertaking, or be legally discharged. It was not the sentence of the court, but the statute, that fixed the nature and terms of the imprisonment. He has neither given an undertaking, taken an appeal, nor applied to the proper court for a discharge. The authority for the imprisonment was the order of filiation, which was in the nature of a judgment, and his failure to comply therewith or give security therefor. When the sufficiency of the warrant of commitment was thus brought in question, the order of filiation could be invoked to sustain it. People v. Baker, 89 N. Y. 461, 467; People v. McEwan, 2 N. Y. Cr. R. 307. We think, in the circumstances, the error and mistake in the warrant of commitment in designating the court of sessions instead of the county court has neither actually prejudiced the relator nor tended to his prejudice in respect to a substantial right, and that it may, therefore, be disregarded. In re Coughlin, 62 How. Prac. 34; People v. Liscomb, 60 N. Y. 571; People v. Hawkins, 3 Code Rep. 42; Teall v. Van Wyck, 10 Barb. 376; Baldwin v. McArthur, 17 Barb. 414; People v. Leavitt (Sup.) 15 N. Y. Supp. 618; Way v. Woolery, 6 Wash. 159, 160, 32 Pac. 1082; Petty v. People, 118 Ill. 148, 8 N. E. 304; People v. McCoy, 39 Barb. 73; People v. Powell, 14 Abb. Prac. 91–103; People v. Sloane, 90 N. Y. St. Rep. 930, 56 N. Y. Supp. 930. But, if it were impossible to sustain the imprisonment on account of the misnomer of the court in the original warrant of commitment, the relator could have been lawfully detained under the corrected warrant. The case is quite unlike those where it has been held that, when an illegal sentence is pronounced by a local court of inferior jurisdiction, the prisoner must be discharged because the magistrate's authority is at an end. People v. Webster, 92 Hun, 378, 36 N. Y. Supp. 995; People v. Smith (Sup.) 9 N. Y. Supp. 181; Id., 125 N. Y. 692, 26 N. E. 751; People v. Starks (Sup.) 1 N. Y. Supp. 721. By the express terms of the statute governing those cases the sentence, certificate of conviction, and commitment were acts of the court, and the sentence required the exercise of discretion and judgment. Here the commitment is required to be made, not by the court, but by the magistrates, or either of them, and there is no discretion to be exercised, for the statute is mandatory and

imperative, and points out just what shall be done. The order of filiation being legal, a compliance with this statutory duty devolving upon the magistrates, or either of them, could be enforced by mandamus; for until such a statute, vesting no discretion in them, be complied with, they are not functus officio. What they could be compelled to do by the court they may lawfully do voluntarily. People v. Aldermen of City of Buffalo, 65 Hun, 300, 20 N. Y. Supp. 1, and cases cited. All of the authorities are to the effect that, if the mistake or error could be corrected, the relator was not entitled to a discharge on habeas corpus. People v. Liscomb, 60 N. Y. 571; People v. Baker, 89 N. Y. 461, 467. It follows that the order of the county judge should be reversed, and the relator remanded to the custody of the sheriff of Wyoming county.

Order of the county judge reversed, with $10 costs and disbursements, and relator remanded to the custody of the sheriff of Wyoming county. All concur.