*Parks v. Crockett.*

———————◆———————

JOHN B. PARKS *vs.* WILLIAM A. CROCKETT and logs marked XWAXI.

*Lien claim upon logs—practice relative thereto.*

The general owner of logs, not the debtor, in a suit to enforce a lien, may demur to the plaintiff's writ and declaration, as insufficient to establish such lien.

By the Acts of 1862, c. 131, the writ is sufficient for such purposes, though in the ordinary form of assumpsit, if the declaration discloses that the suit is brought to enforce a lien on the logs attached.

The writ will be deemed insufficient if one count therein contains a claim *in personam* and another count a different claim *in rem.*

Parks *v.* Crockett.

The clause in R. S., c. 91, § 35, taken from Acts of 1862, c. 131, which provides that in a lien action the forms and proceedings shall be the same as in ordinary actions of assumpsit, is to be construed as permissive and not mandatory; so that the word "shall," contained therein, will be construed as meaning may.

A lien claim can be preserved in no form of proceeding without notice to log owners, the necessity of which under the statute of 1855 was not abrogated by the Acts of 1862, c. 131.

ON EXCEPTIONS.

This was assumpsit upon an account annexed for labor, rendered by the plaintiff to the defendant, upon certain logs in the Penobscot river, marked cross, W, A, cross, notch (XWAXI). At the return term of the writ notice by publication was ordered. It was given accordingly, and at the ensuing term Ivory A. Hodgkins and Nathaniel M. Hartwell, as general owners of said logs, came in to defend the suit as to the logs, but no further, and filed a general demurrer to the plaintiff's writ and declaration as against these logs. After joinder the presiding justice overruled the demurrer and the claimants excepted.

By the precept the officer was commanded " to attach the goods or estate of William A. Crockett, of Springfield, in the county of Penobscot, to the value of two hundred dollars, and also attach logs marked XWAXI, now lying in the Penobscot boom in the Penobscot river, to enforce a lien on said logs for his personal services at cutting and hauling said logs into the Mattagoodus stream, in the town of Prentiss, the last logging season, and driving on said logs this spring in said Mattagoodus stream," and to summon " the said defendants " to answer unto John B. Parks, etc., upon an account annexed. This count was in the ordinary form, making no mention of the logs or of any lien claim, and the account itself was merely " To sixty-eight days' labor in the woods " and " four days at driving," saying nothing about logs or lien.

The only other count in the declaration was the following, with the last sentence placed as below, leaving room for argument whether the claim of lien applied only to this count or to both : " Also, for that the said defendant at said Bangor, on the sixth day of May, A. D. 1871, by his note or due bill of that date, by him subscribed,

promised the plaintiff to pay him the sum of $76.71, for labor done in the woods and driving on logs marked XWAXI. And the plaintiff claims a lien on said logs for his personal services at cutting and hauling said logs in the town of Prentiss in this State, also for his personal services at driving said logs on the Matta-goodus stream, and this action is brought to enforce said lien according to the statute of this State, in such cases made and provided."

It appeared from the officer's return upon the writ that these logs were attached upon the demands of three persons, of whom plaintiff was one (in three several suits), amounting in the whole to less than $200.00, and that the officer's fees on all three of these writs were $488.75, one third of which was charged upon the writ in this case.

*Brown & Simpson*, in support of the demurrer.

The two counts of the declaration set out two separate, distinct causes of action ; the first, a non-lien claim (for aught that appears of record) for labor, in the ordinary form of declaring upon an account annexed, and the other upon a due bill or note, for which a lien is claimed.

A joinder of lien and non-lien claims is a waiver of the lien. *Lambard* v. *Pike*, 33 Maine, 141 ; *Safford* v. *True*, Ib. 283 ; *Bicknell* v. *Trickey*, 34 Maine, 273 ; *McCrillis* v. *Wilson*, Ib. 286 ; *Johnson* v. *Pike*, 36 Maine, 384 ; *Robinson* v. *Bowker*, 38 Maine, 130 ; *Perkins* v. *Pike*, 42 Maine, 141.

Nothing to justify an inference that the two causes of action are identical. *Neally* v. *Judkins,* 48 Maine, 566, and cases there cited.

*A. Sanborn* and *C. A. Cushman*, for plaintiff.

PETERS, J. The questions presented in this case will be satis-factorily solved by a reference to the statutes and decisions in this State upon the subject of a laborer's lien on logs.

The first act giving a lien on logs and lumber for laborers'

wages was in 1848. The only remedy provided by the act was that any person having the lien might secure the same by an attachment. No forms or details were prescribed. It was an innovation upon the rules of the common law to attach the property of one person upon a process against another. Extreme difficulty was imposed on the court to give a sensible and practical construction to the legislative requirement so as not to disregard fundamental rules of law and, at the same time, preserve the spirit and equity of the statute.

In *Bicknell* v. *Trickey*, 34 Maine, 273, and *McCrillis* v. *Wilson*, Ib. 286, the first reported decisions in cases arising under this statute, it was settled that a lien claim would be lost if absorbed in a judgment with a non-lien claim ; and, to meet the difficulty, that separate actions might be maintained upon the two kinds of claims contained in an account that was in other respects an entirety. Questions, which arose afterwards, involving a more definite construction of the statute, as to the form of proceedings in such actions, were not presented by counsel in those cases, nor considered by the court. In the opinions, however, it was declared that proceedings under this statute are to be viewed in a double aspect ; so far as the debtor is concerned as *in personam* and as to the general owner of the property, not the debtor, as *in rem.*

Subsequently, in *Cunningham* v. *Buck*, 43 Maine, 455, it was decided that a declaration in common form, on an account containing no allegation of any claim upon the logs, or authority to attach them only as the goods or estate of the debtor, judgment and execution corresponding, would not authorize a sale of the logs upon such execution to satisfy a lien claim thereon. *Perkins* v. *Pike*, 42 Maine, 141, is to the same effect. But the result reached in those cases did not clear the difficulty. Their tendency was to require, virtually, an *in rem* proceeding assimilated to a proceeding in admiralty. This was objectionable, because it exposed the court to the necessity of granting what was apparently a valid judgment, but really an invalid one, as against a person

not the debtor, who was an owner of the logs. Such a proceeding was injurious to the officer who undertook to execute the mandate of the court, or to the owner, when he was not the debtor, upon whose property it was executed. If the officer was not protected by his process, injurious to him; if he was, then injurious to the owner. The difficulty arising from an *in rem* proceeding without notice to all concerned was thus adverted to in *Perkins* v. *Pike* by the court: " The practical difficulty in cases of lien by statute arises from an omission on the part of the legislature to make provision for notice to all persons interested, so that the judgment rendered should be concluded upon all. In admiralty the process is *in rem*, and notice being given the judgment binds the rights of all. Until provision is made for general notice the judgment may conclude the parties to the suit, but cannot bind others."

In 1855, the remedy thus alluded to was provided in the following act: " In all suits brought to enforce the lien given by the act to which this is additional such notice *shall* be given to the owners of the lumber as the court shall order, and the owner may come into court and defend such suit."

Thereupon the decisions have been that a notice *must* be given to the owners of logs or a judgment *in rem* cannot be obtained, and that it was necessary that the process, judgment, and execution must correspond in all essential respects to a libel *in rem* and proceedings thereon in admiralty. The following leading cases are illustrations of different phases of the practice as settled by the court after the act of 1855. *Redington* v. *Frye*, 43 Maine, 578; *Holyoke* v. *Gilmore*, 45 Maine, 566; *Annis* v. *Gilmore*, 47 Maine, 152; *Campbell* v. *Smith*, Ib. 143; *Thompson* v. *Gilmore*, 50 Maine, 428; *Bean* v. *Soper*, 56 Maine, 299; and the case of *Sheridan* v. *Ireland, ante.*

A question has been heretofore mooted as to what kind of notice to the owners of logs should be given. A practice has to some extent prevailed of allowing persons, claiming to be owners, to appear without notice and defend the suit. It is obvious that,

under such a practice, a real owner may sometimes fail to receive either actual or constructive notice of the pendency of a proceeding which results in a judgment against his property.   In the case of *Sheridan* v. *Ireland and logs,* 61 Maine, *ante,* this court has lately decided that in every case before a judgment of lien can be granted against logs there must be some form of general notice, like publication or posting, to be ordered by the court, which will be sufficient and conclusive notice against all persons concerned.

In 1862, c. 131, it was enacted as follows : " And in all cases where the house or building, or the logs or lumber, on which the labor was performed, have been or shall be attached, the proceedings shall be deemed sufficient to effectuate the lien, if the writ, officer's return of attachment, and the judgment recovered in the suit are or shall be in the usual and common forms of the common law, as heretofore understood and practiced in all other actions of assumpsit, the declaration disclosing that the suit is brought to enforce the lien." In R. S., c. 91, § 36, this provision is consolidated into these words :   " The declaration must show that the suit is brought to enforce the lien ; but all other forms and proceedings shall be the same as in ordinary actions of assumpsit." It will be observed that the mode, provided in the act of 1862, is a' permissible one, and not exclusive, while in the revision of the statute it is made mandatory. But as the act was remedial, and was intended to add, and not to take away, a form of remedy, the word shall in the revised statutes must be construed as meaning no more than may. *Hughes* v. *Farrar,* 45 Maine, 72.

It will be seen that the necessity of notice required by the act of 1855 is not dispensed with by the act of 1862, so that in no form of proceeding can a lien upon logs be made effectual without it. If, however, the writ is in the appropriate form as required by the act of 1862, and the statutory notice has been given, a judgment and execution in the common form will be sufficient to make the lien claim available. When the officer is commanded in such execution to seize and sell the property of the judgment debtor, he will be justified in taking the property attached on the original

precept, although not belonging to such debtor. It will be regarded as his (the debtor's) goods and estate for the purposes of satisfying such execution, and the general owner, whose property is legally encumbered with such lien, will be bound by it. The idea of the legislature, undoubtedly, was that such proceedings, if pursued as a remedy, might have substantial correctness enough for practical purposes.

But it is evident that there will be an essential difference in the value of the two kinds of judgments that may be obtained. In the one case a conclusive judgment *in rem* is had, binding upon all parties, available without further proceeding or proof, an end of the litigation. In the other case the facts to show that the claim recovered is a lien claim that may be enforced against the property attached will not be established by the record itself, but must be shown by proof *aliunde.* If the owner sues an officer for taking his property upon execution, the officer will be compelled to prove facts not contained in the record in order to complete his justification. Two suits are thus necessary to complete the litigation instead of one. As the officer would not be protected by his process, as in the other case, he would be justified in refusing to serve the execution without indemnity; and it may be questionable whether an officer would be compelled to serve an execution against the property of one not the judgment debtor, without any command in such execution therefor, even with indemnity. The owner, moreover, would have the advantage of postponing the commencement of his action as long as he pleased within the period of the statute of limitations. Of course the officer would be allowed, in a suit against him, to supply any deficiencies of fact apparent on the record, that may be necessary for his justification, by evidence contained in any special findings or verdicts, if such exist. In any view, however, it is obvious that a proceeding, which accords only with the requirements of the act of 1862, would be disadvantageous to the creditor in comparison with the mode of getting an adjudication strictly *in rem.*

The only conceivable advantage in the act of 1862 would be

that where a plaintiff in a suit, through inadvertence, by some ir-regularity or omission, fails to obtain a valid *in rem* judgment, to which he was entitled, but takes, instead, a judgment in the com-mon form, the lien is not thereby extinguished and lost, but may still be effectual by proof of the necessary facts in ulterior pro-ceedings. A great mass of lien claims, in early cases, were lost by non-conformity to the forms required by the construction given by the court to the statute, and to this may be imputed the origin of the act referred to.

In the case at bar a demurrer is filed by the owners of the logs, and this opens an inquiry as to the pleadings to be permitted in such cases. The rule of the common law in this regard does not seem to have been dispensed with. In *McPheters* v. *Lumbert*, 41 Maine, 469, it was declared that the owners could not be permit-ted to try the question whether there was a lien claim or not; but this declaration was not necessary to the decision there, and has not been adhered to. In *Lumbert* v. *Lumbert*, 44 Maine, 85, it was afterwards decided that the owner could contest the lien claim; that both the defendant and owner could not plead the general issue; that there could be but one general issue, other-wise two general verdicts would be required; that there could be but one general issue, and under that and appropriate brief state-ments one verdict and special findings, under the direction of the court, would be sufficient to establish the rights of all parties. Cutting, J., adds: " For instance, on such an issue the jury might return a verdict for the plaintiff against the defendants, and at the same time find specially that the lien claim did or did not attach, which findings and verdict would be incorporated into the judgment, and thereby enlarge or limit ulterior proceedings."

We can see no reason why the log owners may not demur to the plaintiff's writ and declaration. This is a form of pleading in-cident to every kind of judicial proceeding. It need cause no complication here. The result of it will settle the controversy, as far as such owner is concerned, one way or the other. The alle-gations of the plaintiff could be adjudged to be insufficient for a

judgment *in rem*, but sufficient for one *in personam*. When the owner comes into court, in obedience to its mandate, he has a right to have all questions affecting him settled as speedily as possible.

The counsel for the log owners, under the demurrer, urges several objections to the declaration in this case. The writ is unskillfully framed, but still the meaning of the allegations may be easily enough understood. It must be regarded as sufficient for a lien-claim writ if it comes within the requirement prescribed by the act of 1862, which dispenses with the necessity of any allegations outside of the common forms of the common law, except that the declaration must disclose that the suit is brought to enforce a lien upon the property attached. It is apparent enough that the first count, aided by the general words following the second count, which are designed to apply to the action and not to that count, comes within the rule.

It is contended that the second count is for an independent cause of action, distinct from the claim covered by the first count, and not a lien claim, and therefore that, as far as the log owner is concerned, the action is not maintainable. But it is evident that the claims described in the two counts are identical. If it were otherwise the objection would be unanswerable. The owner is summoned in to answer " to the suit," and not to a part of it, or to one claim in it, when there are more claims than one. His property should not be subjected to the costs and delays of a controversy in which he has no interest whatever. Even in admiralty a joinder of a claim *in personam* with a different claim *in rem* is never admissible, and at common law independent causes of action can be comprised in one suit only when they are of the same general nature and the mode of trial upon them is the same. The language of R. S., c. 91, § 36, is: " The declaration must show that the suit is brought to enforce the lien." How can it be said to be brought for that purpose if it is brought also for another purpose? An account can be divided, and separate actions main-

tained, where a portion is secured by a lien and a portion not secured.  *Bicknell* v. *Trickey, ubi supra.*

It is earnestly urged that the owners should not be subjected to what is claimed to be an exorbitant charge of costs by the officer for keeping the logs attached.  The apparently extraordinary sum charged in this case cannot be allowed without clear proof of its necessity.  That, however, cannot be determined here.  The owner, upon notice, can be heard elsewhere and his rights preserved.

It would be well if the court had power to settle all questions of costs and to apportion them in cases like this, as in equity cases, a power conferred already by R. S., c. 91, § 15, in cases of lien upon vessels.

It does not appear by the case whether the defendant in this action is still in court or not.  Therefore the result must be as follows :

> *Exceptions overruled.   Judgment in rem for the amount claimed in the first count to be entered for the plaintiff as against the logs ; to be final unless the sum is reduced or the action defeated upon an issue between the plaintiff and defendant.*

APPLETON, C. J.; CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.