THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM B. MOORE, Overseer of the Poor of the Town of Parma, Respondent, v. WILLIAM E. BEEHLER, Appellant.

*Bastardy proceedings — death of the child after a warrant is issued, but before it is served — liability of the father to the town — Code of Criminal Procedure, secs. 840, 841 and 851.*

A warrant was issued for the arrest of the alleged father of a bastard child, who was at the time a charge upon the town of Parma. Before service of the warrant the alleged father fled from the State, and did not return until after the death of the child. He was then arrested, and an order of filiation was made by which he was adjudged to pay for the support, care and funeral expenses of the child, the sum expended therefor by the town.

*Held,* that the statute was a remedial one and should be liberally construed.

That, notwithstanding the death of the child, the father was properly charged with the expenses stated.

Appeal by the defendant William E. Beehler from a judgment, rendered in the Monroe County Court of Sessions on the 25th day of September, 1890, upon a conviction of the defendant, and in affirmance of a judgment in bastardy proceedings brought into said court upon an appeal from a Court of Special Sessions in the town of Parma, in said county.

The order of filiation made by two justices of the peace in and for the town of Parma, in proceedings in bastardy, adjudged the appellant to be the father of a bastard, and ordered him to pay to the overseer of the poor of that town $129.66 for the support, care, burial and medical attendance of said child, to reimburse the town of Parma for its expenses on account of the child, to its death on February 3, 1890; and to pay for the attorney for the overseer the

sum of fifty-four dollars and eighty cents costs, and to enter into an undertaking to pay accordingly.

*W. Henry Davis*, for the appellant.

*George A. Benton*, for the respondent.

Lewis, J.:

Mary E. Williamson was delivered of a bastard in the town of Parma, county of Monroe, on the 12th day of August, 1889. She was a resident of that town, and, being unable to support the child, bastardy proceedings were instituted by the overseer of the poor of the town against the appellant, as the father of the child, on the 23d day of August, 1889. The warrant for his arrest was delivered to an officer. He was not then able to serve it for the reason that appellant had absconded from the jurisdiction of the court. He returned to the State about the 1st of April, 1890, and on the seventh day of that month he was arrested and brought before two magistrates of that town, and on the 23d of April, 1890, the magistrates inquired into the charge against the appellant and adjudged him to be the father of the bastard, and determined that he pay to the overseer of the poor for its support, care, burial and medical attendance $129.66; and they certified that the reasonable costs of apprehending and securing the appellant, and of the order of filiation, was the sum of sixty-four dollars and sixty-five cents.

After the delivery of the warrant to the officer, but prior to the apprehension and trial of the defendant, the child died. The appellant appealed from the order of the magistrates to the Court of Sessions of Monroe county, which court, after hearing the proofs and allegations of the parties, affirmed the order of filiation, and adjudged that the appellant pay to the attorney for the overseer the sum of fifty-four dollars and eighty cents costs of the appeal, and that he enter into an undertaking to the effect that he will pay $129.66, the amount of the judgment below, and that he will indemnify the town for the sum incurred for the support of the child.

The appellant appealed to this court from the order and judgment. There was abundant evidence to show that the appellant was the father of the child, and the sum he was adjudged to pay was not excessive. The only question worthy of any consideration arises

from the circumstance that the child died before the authorities were able to cause the arrest and trial of the appellant.

Section 840 of the Code of Criminal Procedure provides that: "If a woman be delivered of a bastard * * * which is chargeable to * * * a town * * * an overseer of the poor * * * must apply to a justice of the peace * * * to inquire into the facts of the case."

By section 841 "The magistrate must by the examination of the woman on oath, and any other testimony which may be offered, ascertain the father of the bastard, and must issue his warrant directed to a peace officer of the county commanding him, without delay, to apprehend the father and bring him before the justice of the peace for the purpose of having an adjudication as to the filiation of the bastard."

Section 851 provides that: "If the defendant be adjudged to be the father, he must immediately pay the amount certified for the costs of the arrest and of the order of filiation and enter into an undertaking * * * that he will indemnify * * * the town * * * where the bastard was * * * born, * * * which may have been or may be put to expense for the support of the bastard or its mother during her confinement."

The overseer of the poor assumed the care and supervision of the child; he expended the amount the appellant was adjudged to pay for its support and care, and its funeral expenses.

The child was an actual charge upon the town when the warrant was issued for the appellant's arrest; and had he then submitted himself to the jurisdiction of the court, the trial would have taken place while the child was living. The statute is a remedial one. Its purpose is to compel the father of a bastard to indemnify the town for the expenses incurred for its support. The father and mother of such a child are liable for its support; and in case of their neglect or inability it must be supported by the county, city or town to which it is chargeable. The mother, in this case, was unable to support her child; its father fled from the State and neglected to support it.

The construction contended for by the appellant would be an exceedingly narrow one to give to this remedial statute. It would be a miscarriage of justice if the appellant, by fleeing from justice

and remaining out of the jurisdiction of the court until his offspring died, could thereby thwart the purpose of the statute and escape liability for his misconduct.

The courts below, we think, correctly held that, notwithstanding the death of the child before the trial, the appellant was liable to indemnify the town for any expense it had been put to for its support and burial.

We are not aware of any adjudication of this question in our own State. Under statutes very similar to our own it was held in *Meredith* v. *Wall* (14 Allen, 155); *Smith* v. *Lint* (37 Me., 546); *Maxwell* v. *Campbell* (8 Ohio St., 265); *Hauskins* v. *The People* (82 Ill., 193); *Evans* v. *The State* (58 Ind., 587) that the father was liable for such expenses in case of the death of the child before the proceedings against him were instituted.

The order for judgment appealed from should be affirmed, with costs.

Dwight, P. J., and Macomber, J., concurred.

Judgment of the Court of Sessions of Monroe county affirmed, with costs.