ELIZABETH INMAN

*vs.*

LAWRENCE WILLINSKI

Piscataquis.   Opinion, March 15, 1949.

*Mathew Williams*, for complainant.

*Judson C. Gerrish*, for respondent.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

TOMPKINS, J. On exceptions to sustaining a general demurrer to the complaint in a bastardy action brought under Chapter 153, Section 23 et seq. which relates to bastards and their maintenance and reimbursement to the mother for lying-in expenses. Respondent waived argument and filed no brief.

From the copies of the proceedings before us it appears that on the 18th day of April, 1947, the complainant made her accusation on oath before a Justice of the Peace, stating that she was pregnant with a child, which was delivered dead November 21, 1946, and which, if it had been born alive, would have been a bastard, and accused the respondent of being the father of said child. In her complaint and accusation she stated the time and place where the child was begotten, and prayed for process that the respondent be apprehended and held to answer to the complaint and to be further dealt with relative thereto as the law directs.

The warrant was duly issued reciting the facts as set out in the accusation, and the respondent was arrested and brought before a Justice of the Peace. After hearing the Justice of the Peace ordered the respondent to give bond, conditioned for his appearance at the September term 1947 of the Superior Court for Piscataquis County. The bond was furnished and the case continued until the March term 1948. At the latter term the complainant filed a declaration as provided by Section 27 of Chapter 153 of the Revised Statutes, stating that she was delivered of a bastard child on the 17th day of November, 1946, that said child was begotten by the accused on the 30th day of May, 1946, and the place thereof; that during the time of her travail being put upon the discovery of the truth she accused the respondent of being the father of said bastard child of which she was about to be delivered; that she had been constant in said accusation; and that she still accused said respondent of being the father of her bastard child. Thereafter the respondent filed a general demurrer to the complaint.

Issue was joined, and after hearing, the Justice Presiding sustained the demurrer.

The demurrer, "Is a form of pleading incident to every kind of judicial proceeding." *Parks* v. *Crockett*, 61 Me. 489 at 496. A general demurrer admits all facts well pleaded, and challenges their sufficiency in law upon which to maintain the action. And the only issue is whether in the language used the plaintiff has stated a legal cause of action. *Brown* v. *Rhoades*, 126 Me. 186; 137 A. 58; 53 A. L. R. 834; *Bank* v. *Kingsley*, 84 Me. 111 at 113; 24 A. 794.

Bastardy proceedings are purely statutory and were unknown to the common law. *Woodbury* v. *Yeaton*, 135 Me. 147 at 148; 191 A. 278.

The complainant seeks to recover her costs of suit and expenses of her delivery and her nursing, medicine and medical attendance during the period of her sickness and convalescence.

Solution of the question depends upon the construction of the bastardy statute. A statute must be construed as a whole. *Rackliff* v. *Greenbush*, 93 Me. 99-104; 44 A. 375.

Section 23 of Chapter 153 provides, "When a woman pregnant with a child, which, if born alive, may be a bastard, or who has been delivered of a bastard child, accuses any man of being the father thereof before any Justice of the Peace, and requests a prosecution against him, such Justice shall take her accusation and examination on oath, respecting the accused and time and place when and where the child was begotten, as correctly as they can be described, and such other circumstances as he deems useful in the discovering of the truth."

Section 24 provides: "The Justice may issue a Warrant for apprehension of the accused . . . . ."

Section 25 provides: "When the accused is brought before such or any other Justice, he may be required to give bond to the complainant with sufficient sureties in such reasonable sum as the Justice orders, conditioned for his appearance at the next term of the Superior Court for the County in which she resides, and for his abiding the order of the Court thereon . . . . ."

Section 26 provides: "If at such next or any subsequent term, the complainant is not delivered of her child, or is unable to attend Court, or shows other good reasons, the cause may be continued."

Section 27 provides: "Before proceeding to trial, the complainant must file a declaration, stating that she has been delivered of a bastard child begotten by the accused, and the time and place when and where it was begotten, . . . . . ; and that being put on the discovery of the truth during the time of her travail, she accused the respondent of being the father of her child, and that she had been constant in such accusation."

Section 28 provides: "When the complainant has made said accusation; been examined on oath; been put upon the discovery of the truth of such accusation at the time of her travail, and thereupon accused the same man with being the father of the child of which she is about to be delivered; has continued constant in such accusation, and prosecutes him as the father of such child before such Court; he shall be held to answer to such complaint; and she may be witness in the trial."

Section 29 provides: "If on such issue the Jury finds the respondent not guilty, he shall be discharged, but if they find him guilty, or the facts in the declaration filed are admitted by default or on demurrer, he shall be adjudged the father of said child; stand charged with its maintenance, with the assistance of the mother, as the Court orders; and shall be ordered to pay the complainant her costs of suit

and for the expenses of her delivery and of her nursing, medicine, and medical attendance during the period of her sickness and convalescence, and of the support of such child to the date of rendition of Judgment; and shall give a bond, with sufficient sureties approved by the Court, or by the Clerk of said Court . . . . . to the complainant to perform said order and a bond, with sufficient sureties so approved, to the town liable for the maintenance of such child . . . . ."

Under the statute as it existed prior to 1909 no provision was made for lying-in expenses. Chapter 111 of Public Laws of 1909 amended Section 7 of Chapter 99 of the Revised Statutes of 1903. This section now appears as Section 29 of the Revised Statutes of 1944. The amendment provided that a filiation order might include reimbursement to the complainant for costs of suit, expenses of her delivery, her nursing, medicine, and medical attendance during the period of her sickness and convalescence. There was no amendment, however, made to Section 23 or the other sections of the statutes corresponding to the sections of the Revised Statutes of 1944, which authorized the commencement and prosecution of the action. The right to institute action was confined to a woman who was, "Pregnant with a child which if born alive might be a bastard," or after the birth of the child was still confined to a woman who had, "Been delivered of a bastard child," and the statutory requirement that before proceeding to trial the complainant must file a declaration stating that she, "Has been delivered of a bastard child," remained unchanged. The sole object of the statute before the amendment of 1909 relating to bastard children was to compel the putative father to aid in supporting his illicit offspring. Without his assistance the support must fall on the mother or the municipality. *Woodbury* v. *Wilson*, 133 Me. 329; 177 A. 708 and cases there cited.

The purpose of the amendment of 1909 was to enlarge the order for the benefit of the mother, and thus compel the

father to render additional help in paying costs of suit, the expenses of her delivery, nursing, medicine, and medical attendance during the period of her sickness and convalescence. *Woodbury* v. *Wilson, supra.*

Will the fact that the child is born dead before complainant institutes proceedings abate the action and relieve the respondent from the expenses provided for by the 1909 amendment to Section 29? This is the first time the question has been before this court.

In *Canfield* v. *State*, 56 Ind. 168, there was a prosecution in which the complainant alleged she had been delivered of a bastard child. The evidence showed that the child was stillborn, that its lungs were never inflated, and the prosecution was commenced after the birth of the child. The court held that the proof did not sustain the averment of the complainant that she, "Had been delivered of a bastard child. That never having breathed it had never lived; Until a child is wholly born and has attained a separate existence, it is but a foetus *in utero* and not a human being, within the meaning of the law authorizing proceedings for the maintenance of bastard children after their birth."

In *State* v. *Beatty*, 61 Iowa 307; 16 N. W. 149, the statute provided that when, "Any woman . . . . . is delivered of a bastard child, or is pregnant with a child, which, if born alive, will be a bastard, complaint may be made in writing . . . . ." The statute further provided, "If the accused be found guilty he shall be charged with the maintenance of the child, . . . . . with the costs of suit." The action was commenced during pregnancy, the child was born dead, the court said, "It having been dead born it never was a being whose maintenance could be charged to anyone. It is true, the action was properly commenced before the delivery of the child, because the law authorized it to be commenced. But it does not follow that because the action was properly commenced, the right of action continued after it was demonstrated that there was not and could not be a bastard

child to maintain. The child not having been born alive, the action abated and no judgment could be rendered against the defendant for the maintenance of a person not in existence, and who never was in being, and if no judgment could be rendered against the defendant he was not liable for costs."

By analogy and by the reasoning in the above cases we hold that our statute contemplates a child born alive. That in the instant case our statute when it used the term, "Delivered of a bastard child," meant a living human being. The dead foetus cannot be substituted for the living organism and does not supply the requirements of the statute. We express no opinion upon what the result would be if the action was commenced before the delivery of the dead foetus. We are not confronted with that issue in the case under consideration.

Section 29 of the statute provides that upon the issue, "They (the Jury) find him guilty or the facts in the declaration filed are admitted by default or on demurrer, he should be adjudged the father of said child." No filiation order could issue because there was no child of which the accused could be termed the father. If no filiation order could issue then no order for payment for the expenses set forth in the statute could issue, unless the 1909 amendment changed the meaning of the words, "Delivered of a bastard child," and allowed the court to order reimbursement for lying-in expenses. The words in the prior sections of the statute were not changed and still retained the phrase, "Delivered of a bastard child," which means a living child, as we have heretofore stated.

It has been noted heretofore that before the amendment of 1909 the sole object of the statute was the maintenance of the bastard child, and as assumed in *Denett* v. *Nevers,* 7 Me. 399, the costs of suit.

To hold that the 1909 amendment changed the meaning of the phrase, "Delivered of a bastard child," would require a finding that the 1909 act amended the other sections of the statute by implication. "Amendments by implication, like repeals by implication, are not favored and will not be upheld in doubtful cases. The Legislature will not be held to have changed the law it did not have under consideration when enacting a later law, unless the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together." Sutherland Statutory Construction, Third edition, Section 1913. This principal has been recognized by our court in *Starbird* v. *Brown,* 84 Me. 238; 24 A. 824 and *Mace* v. *Cushman,* 45 Me. 250 at 260.

From the effective date of an amendment a statute is to be construed as if it originally contained the new provision. *State* v. *Goddard,* 69 Me. 181. Our court has said, "A Statute must be construed as a whole and the construction ought to be such as may best answer the intention of the Legislature. Such intention is to be sought by an examination and consideration of all its parts and not from any particular word or phrase that may be contained in it. This is the guiding star in the construction of any statute. Such a construction must prevail as will form a consistent and harmonious whole." *Rackliff* v. *Greenbush, supra.* In construing a statute the amendment should be confined to the subject matter of the statute in which the change is made. *Cushing* v. *Everett,* 82 Me. 260 at 265; 19 A. 456.

Applying these tests to the instant case it is readily seen that the amendment of 1909 did not change the original meaning of the phrase, "Delivered of a bastard child." The amendment was to Section 29 of the Act respecting the remedy and not to Section 23 giving the right. The amendment was designed solely for the purpose of giving an additional remedy to, "A woman who has been delivered of a bastard child," not to create a right where no right existed

before. If the Legislature had intended the respondent to pay for lying-in expenses caused by pregnancy, alone, it could have said so.

The final question confronting this court is a procedural one. Whether or not the fact of the delivery of a stillborn child as stated in the original accusation and complaint to the Justice of the Peace, and in the warrant which he issued thereon, is such a defect as is open to attack by a demurrer filed to the complaint in the Superior Court. The procedure in bastardy cases is *sui generis,* and it is hard to draw analogies from ordinary common law actions. "The Statute introduces provisions differing most materially from the course of proceedings of the common law, and the rights of the parties will depend upon their construction." *Blake* v. *Junkins,* 34 Me. 237.

By Section 28 of the Act, it is only when the complainant has made the accusation before the Justice of the Peace as provided for in Section 23, and further statutory requirements are fulfilled that the respondent has to answer to the complaint. The right to prosecute is derived wholly from Section 23 of the Statutes. That the complainant has been delivered of a bastard child is an essential preliminary to the adjudication. "To authorize an adjudication in her favor the complainant must show a compliance on her part with all the essential requirements of the Statute." *Palmer* v. *McDonald,* 92 Me. 125; 42 A. 315, 316. The accusation and complaint showed upon its face that the complainant had not been delivered of a bastard child, and she has not come within the provisions of Section 23 of the Act. The accusation she has made is one upon which a filiation order cannot be issued under Section 29. The complaint to the justice is that on which the filiation final order is to be made, and is the basis on which the respondent is brought before the court. Its sufficiency and substance to comply with Section 23 is one of the conditions precedent to requiring the respondent to answer thereto. Our court has

held that it was not error in the bastardy proceedings to make the adjudication upon the default of a defendant who has been duly served with process and who has given a valid bond for his appearance to abide the order of court, upon the complaint and before the filing of the declaration provided for in Section 27. *Priest* v. *Soule,* 70 Me. 414. This section also required that the complainant must file a declaration stating, "That she has been delivered of a bastard child." A dead foetus is not a bastard child, and she would not be entitled to recover under the bastardy statute. The issue in a case of this nature is whether the complainant has been delivered of a bastard child begotten by the respondent. She was not so delivered, because it was stillborn. In her complaint she states that if it had been born alive it would have been a bastard. This was a defect in substance in the complaint, and can properly be reached by a general demurrer to the complaint. Section 28 of the Statute provides that after all the preliminary statutory proceedings have been complied with that it is then "He shall be held to answer to such Complaint." He has answered to the complaint by a general demurrer.

We are not unmindful of the case of *Cooper* v. *Littlefield,* 45 Me. 549 cited in the complainant's brief. In that case the respondent filed a general demurrer to the declaration and the proceedings. The objection which the defendant there sought to raise was that he was never brought before any Justice of the Peace or Magistrate for a preliminary examination, and that the officer in taking the bond was unauthorized to do so, and thus gave the court no jurisdiction. The court said, "The copies, which are before us, show that the proceedings were authorized by law . . . . . but the defendant having submitted to the jurisdiction of this court, and filed his demurrer, is precluded from making successfully the objections on which he relies. The defects referred to were in preliminary proceedings, if they really existed, which cannot avail the defendant upon the demurrer. The copies exhibit sufficient to have entitled the

complainant to a judgment of filiation against the defendant, on proof of the facts as they appear in the documents. These facts being admitted as the case is presented, the demurrer was properly overruled, and the complainant is entitled to judgment thereon."

In the instant case the demurrer was to the complaint alone and not to the declaration and proceedings. The complaint as filed in the instant case clearly shows that the complainant is not entitled to judgment, because the complaint itself is insufficient in law. It is the complaint to which he is held to answer. It states on its face facts which preclude the complainant from recovery. The demurrer to such complaint in the Superior Court properly raised the issue as a matter of law, whether the complainant had been, "Delivered of a bastard child." She had not. The presiding justice properly sustained the demurrer. The respondent is entitled to judgment thereon.

*Exceptions overruled.*