Jacob T. Zukerman, J.
The facts:
This is a motion to dismiss the petition herein. The petitioner had filed a petition on February 24, 1969 alleging that the respondent was the father of a child allegedly conceived between the fall of 1968 and the middle of January, 1969 as a result of sexual intercourse between the parties. On March 10, 1969, the respondent appeared and denied each and every allegation and requested a blood grouping test. Such a test was ordered to be performed on September 9, 1969 after the expected birth of the child.
On or about May 10, 1969 the pregnancy was terminated by the performance of a therapeutic abortion at Columbia Presbyterian Medical Center.
On September 29, 1969 the respondent moved to dismiss the petition on the grounds that the court’s jurisdiction had terminated with the termination of the petitioner’s pregnancy.
*382 The petitioner opposes such motion since she feels she is entitled to an opportunity to establish paternity in order to secure reimbursement for costs of the abortion and other reasonable expenses in connection with her pregnancy as the court in its discretion may deem proper, and requests counsel fees.

The issues are these:

1. Whether the termination of the pregnancy divested the petitioner of her right to proceed with this action.
2. Whether the term “ reasonable expenses in connection with her pregnancy ” includes the costs of a therapeutic abortion.
3. Whether the petitioner is entitled to counsel fees.

Has petitioner been divested of her rights

In considering the first issue, as to whether the termination of the pregnancy divested the petitioner of her rights to'proceed with this action, it is necessary to consider the nature of the filiation proceeding.
‘ ‘ Bastardy proceedings are purely statutory and were unknown to the common law” (Inman v.. Willinski, 144 Me. 116, 118, citing Woodbury v. Yeaton, 135 Me. 147). The question of the nature and character of the rights consequent on paternity proceedings “ depends upon construction of the bastardy statute ” (Inman v. Willinski, p. 118, citing Rackliff v. Inhabitants of Greenbush, 93 Me. 99), so that the divergent views and conclusions reached in 1 ‘ the few cases dealing with the precise point of concern here — whether a court may entertain filiation matters initiated after [termination of the pregnancy or the death of the infant] reflect a basic diversity in legislative and judicial approach to. the problem and appraisal of the evil sought to be cured.” (Ann. 7 ALR 2d 1397, “ Effect of death of child prior to institution of bastardy proceedings by mother ”.)
Even though these proceedings are statutory in nature, since they are remedial the statutes dealing with filiations should be liberally construed. (People ex rel. Smith v. McFarline, 50 App. Div. 95, 98.)
It has long been held that, where the child born out-of-wedlock died after proceedings were begun but before the trial of the matter was had, the proceedings did not abate. “ The statute is a remedial one. Its purpose is to compel the father of a bastard to indemnify the town for the expenses incurred for its support” (People ex rel. Moore v. Beehler, 63 Hun 42, 44).
In State ex rel. Discus v. Van Dorn (56 Ohio App. 82) it was held that a petitioner who instituted suit after termination of *383 her pregnancy by a still birth was entitled to sue and to recover from the putative father since the object of the statute is not only the maintenance of the child but also for providing the necessary expenses caused by pregnancy and childbirth.
Earlier, in 1907, it was decided in State v. Addington (143 N. C. 683), that the bastardy statute was remedial and intended to compensate the mother; thus the mother of a stillborn child could institute filiation proceedings after confinement and recover for the costs of ‘1 medical attention and medicine for herself and the burial expenses of the child, all consequent upon the defendant’s unlawful act.”
While there are some cases in other jurisdictions which deny recovery where the pregnancy has ended prior to trial or judgment, they are based on the rationale that the applicable statute was intended primarily for the benefit of the bastard. (Inman v. Willinski, 144 Me. 116, supra; State v. Beatty, 61 Iowa 307.) We believe, however, that the New York statutes dealing with filiations have always been remedial and are intended to cover the costs of the mother during her confinement. (People ex rel. Moore v. Beehler, 63 Hun 42, supra.).
There is nothing in the current statute to require the continued life of the child as a basis for continuation of the proceeding. The mother is given the right of action under section 514 of the Family Court Act to have the father pay the reasonable costs of confinement, recovery and expenses in connection with her pregnancy.
In Grant v. Konis (203 Misc. 1089) it was held that a paternity proceeding commenced during pregnancy could be tried during pregnancy, where there had been no demand for a blood grouping test. Thus it is logical that the mother’s rights should vest in her even prior to the birth of the child, because the statute is remedial, as was the North Carolina statute alluded to in State v. Addington (143 N. C. 683, supra). There, as indicated, it was held that the father could be required to make payments to or for the benefit of the mother before delivery of the child..
The rights of the mother vested in her, independently of the rights of the infant. The termination of the pregnancy did not divest her of her rights.

Is therapeutic abortion an expense in connection with pregnancy?

It appears clear to us that the costs of a therapeutic abortion can be included within the statutory definition of ‘ ‘ such reasonable expenses in connection with her pregnancy as the court in its discretion may deem proper” (Family Ct. Act, § 514). Whether the therapeutic abortion performed in the particular *384 ease was a result of the alleged pregnancy and what are the reasonable costs are matters to be determined at the hearing proper, hut we see no reason why such expenses should be treated in a fashion different from the expenses of a stillbirth.
Accordingly, we find that the petitioner should have her day in court to attempt to prove the allegations of the petition. The motion to dismiss is denied. Hearing set for January 21,1970.

The question of counsel fees

The question of counsel fees cannot be determined in the absence of a finding of paternity and an order of filiation. The application for counsel fees is therefore denied at this time, without prejudice to the right of the petitioner to pursue the application at the hearing.
On consent of the parties, the order for the blood group test is vacated.