OPINION OF THE COURT
John J. Dunn, J.
Both parties to this litigation have filed petitions seeking a filiation order for the sole child born of this union on February 16, 1981. The natural mother filed on July 27, 1982 and the natural father, the following day, namely, July 28, 1982.
Prior to trial, counsel for the litigants stipulated to the entry of such an order including the rights of each party as to custody, visitation and child support. The issue left for the court’s determination was that of the infant’s surname. The child’s birth certificate presently lists his surname as that of the mother. The father wishes to have the certificate and the child bear his surname, while the mother feels otherwise and is resisting his efforts to a name change.
Mother and father, referred to herein as petitioner and respondent, respectively, have been known to each other some 13 years and commenced living together in May, 1979, continuing this relationship up to the birth of their *641 child in February, 1981. Following the youngster’s birth, the petitioner left the home of the respondent and took up residence in an apartment shared only by her and her newborn son. This lasted some six weeks whereupon the petitioner resumed living with respondent and the infant, Sean. All three parties continued living together for approximately 14 months only to again separate, which is the present status of the relationship. The costs of the household and the offspring had been shared equally but at present, the respondent pays $45 weekly for the care of his son. Both litigants have testified to their love and devotion to their infant son and the court is impressed with their sincerity and dedication. Testimony indicates that both parties have shared in such chores as child bathing, diaper changing, feeding, baby-sitting and entertainment or play with young Sean. Both petitioner and respondent are relatively young, earning respectable salaries and can be expected to share and participate in the growth, care and nurturing of their offspring. If the past is any barometer or prognostication of the future, the child will not be deprived of parental love and guidance. The court takes particular note of the concern both parents displayed in the baptism of the child and applauds the petitioner for alerting the father of the impending ceremony at her parents’ home in New Mexico and likewise lauds the father for his plane flight to such a distant site in order to participate in the church-sponsored sacrament. The baptismal certificate, unlike the birth certificate in New York, has the respondent recited as the father of the child, as well it should. This State does not request of the father what name, if any, the child should bear, such designation being the sole propriety of the mother. In the case at bar, the father’s name has been completely omitted although he visited with his newborn son on his date of birth.
The respondent father wishes to have his son bear his surname, of which he feels proud: He has impressed this court with his intentions of being a most dedicated parent who will fulfill hid role and responsibility to the youngster. The petitioner herself characterized the respondent as a “good father”. Conversely, the mother opines that since the boy lives with her most of the time and since she has *642 changed her life-style and job hours for the betterment of young Sean, the boy should bear only her name. She has informed the court that “there are a lot of children that have either the mother or the father’s name”. Such are the salient facts.
The issues to be resolved are twofold: (1) does the Family Court have the power in an article 5 filiation proceeding (Family Ct Act, art 5) to determine the surname of the child, and assuming it does, (2) will the child’s interests be best served by his bearing the surname of the adjudicated father? Notwithstanding the willingness of both sides to have this court determine the boy’s name, the mother now asserts that the court lacks jurisdiction to determine surname “status” in a paternity proceeding, relying upon a recent New York County Family Court decision, Dana A. v Harry M. N. (113 Misc 2d 635). The father, however, maintains that a proper construction of section 543 of the Family Court Act together with the emerging judicial trend towards establishment of equal rights for putative fathers, provides a sound rationale for a grant of power to this court to determine the matter raised.
It is axiomatic that the Family Court is a creature of legislative enactment and thus may act only pursuant to an enabling statute. (Clune v Clune, 57 AD2d 256; Matter of Borkowski v Borkowski, 38 AD2d 752; Da Via v St. Denis, 107 Misc 2d 750.) Nevertheless, and despite this apparent mandate of limited jurisdiction and precise construction of the law, the court is obligated to protect the welfare of children and to ensure that their best interests be served. (Matter of Orlando F., 40 NY2d 103; People ex rel. Ruppert v Dinin, 49 Misc 2d 585; People v Keller, 37 Misc 2d 122.) Indeed, the court was established “as a ‘special agency for the care and protection of the young and for the preservation of the family.’ (* * * Joint Legislative Committee on Court Reorganization, Report II, the Family Court Act, p 2.) It was meant to be the one judicial forum in which almost all problems of the family could be heard and hopefully settled.” (Matter of Fusco v Roth, 100 Misc 2d 288, 293; emphasis added.)
An analysis of the Family Court Act as a whole, giving proper weight to the intentions of the Legislature in con *643 struing the various provisions of the act, reveals a grant of jurisdiction to the Family Court that often belies the ostensible narrowness of the specific statutory scheme set forth. Indeed, in addition to the precise exclusive jurisdictional grants listed in section 115, the court possesses “such other jurisdiction as is provided by law.” (Family Ct Act, § 115, subd [d].) Indeed, a significant portion of the caseload of the court consists of actions and proceedings which are not recited in the Family Court Act (e.g., adoptions, foster care review, consents to marry, termination of parental rights, USDL [Uniform Support of Dependents Law, Domestic Relations Law, art 3-A] proceedings, etc.). It would thus be sheer folly to believe that the court’s power is limited exclusively to matters that are specifically enumerated in the Family Court Act itself. Indeed, the Legislature surely intended that the court do such other “nonenumerated” acts that would otherwise serve the purposes stated in Matter of Fusco v Roth (supra). As one of the early planners of the Family Court states: “[Despite strict construction] the Court does have such [other] collateral jurisdiction as is necessary to implement and fulfill the purposes of its expressly provided, primary jurisdiction.” (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 115, p 22.)
With respect to the instant proceeding, it can be said that the “expressly provided, primary jurisdiction” of article 5 of the Family Court Act is to enter an order of filiation and child support. Nevertheless, there are other collateral powers expressly or impliedly found in article 5 that can otherwise serve to satisfy the “protection of the child” purpose of paternity proceedings. (See, e.g., Matter of J. [Anonymous], 50 AD2d 890; Matter of Geraldine K. v Elliot B., 99 Misc 2d 720.) Indeed, as an incident to the establishment of paternity, the court may issue orders of protection directing a parent to “refrain from acts of commission or omission * * * that impair the welfare of the child” (Family Ct Act, § 551, subd [e]). Further, upon the issuance of an order of filiation, the court must transmit notification forms to the health commissioner relative to the birth certificate of the child (and relative to the name of the child as chosen by the mother). Still further, the court in article *644 5 proceedings may enter an order so as to “insure that in the care, protection, discipline and guardianship of the child, his religious faith shall be preserved and protected.” (Family Ct Act, § 551, subd [h].)
This court does not categorize this collateral paternity act as merely “ministerial”, as the court in Dana A. (supra) did, relative to section 543 birth record transmittals. An act of such allegedly “ministerial” nature would more properly be lodged in the rules of court or in the rules of the judicial department. Surely, the Legislature’s placement of section 543 in the Family Court Act itself under the subheading “orders” (art 5, part 4), is evidence that the section is more substantive than ministerial. Further, inasmuch as section 543 mandates transmittal of the order of filiation with the mother’s choice of name contained therein, can it not be said that the court’s specific authority is to effect a name change when the parties are consenting thereto? If such be the case (and the contents of the section 543 name notification wholly indicates this), then how can it be rationally claimed that the court’s power over the name is limited to instances where the consent of the parties is had? The law must be construed as contemplating more than consent jurisdiction only; again, section 543 must be read in conjunction with the Family Court Act in its totality. Should the petitioner’s argument be correct, then this court may declare parentage, enter support, determine custody and visitation, order the cessation of any act tending to be against the welfare of the, child, insure that the child’s religious interests are served and do all things necessary and proper to enforce these acts, yet be prevented from affecting the name of the child except where the mother consents thereto. Such an illogical result could never have been intended by the drafters; such an unjust result must be avoided by a fair construction of the law. Section 146 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1, § 146, pp 297-299) states: “Prominent among the [evils] sought to be avoided in the construction of statutes are hardship and injustice, and courts will [consider] that one construction will lead to hardships which another would avoid * * * The Legislature is not lightly to be charged with enacting a statute which will *645 operate harshly or unjustly; and, if a statute apparently has such effect, some other construction is to be sought if possible * * * Thus if a fair construction can be found which gives force to the whole act and to the legislative intent, and does not work an injustice, it must necessarily be adopted.”
In view of all such compelling rationale, and considering that article 5 of the Family Court Act may be liberally construed (Matter of Commissioner of Social Servs. v Oliver P., 97 Misc 2d 957; Matter of LinnieB. v Lonnie H., 65 Misc 2d 754; Matter of Gladys C. v Robert L., 61 Misc 2d 381; Matter of Anonymous v Anonymous, 56 Misc 2d 711), this court holds that under subdivision (d) of section 115 of the Family Court Act and pursuant to the broad grant of powers contained in article 5, the Family Court may determine the surname of children in paternity proceedings as an incident to the over-all protection of their welfare.
The question now is whether the child herein should bear the surname of the petitioner mother or respondent father. Under the circumstances of the action, the father has demonstrated an active and sincere interest in the rearing of the child and has participated significantly in the normal child raising activities. Indeed, the quality and quantity of the respondent’s contacts with the child are quite similar to those that are normally associated with “legitimate” fathers. In terms of affection, responsibility and communication, the only distinction between this respondent’s paternal status and that of a married legitimate father, is the absence of a legally recognized relationship between father and mother. Inasmuch as there is such parental involvement by the respondent, and considering that neither parent has a superior right to determine the child’s name (State of New York ex rel. Spence-Chapin Servs. to Families & Children v Tedeno, 101 Misc 2d 485), the court does not believe that the matter may be resolved solely upon deference to the party having legal custody (State of New York ex rel. Spence-Chapin Servs. to Families & Children v Tedeno, supra).
There still exists in our society, especially in the microcosm of youth, a certain recognizable stigma that attaches to illegitimacy. While marriage may well have developed *646 into a less than sacred institution and despite divorce being a fairly common fact, there is an assumed evil, albeit an illogical one, that descends upon a child who is born out of wedlock. Young persons especially, most of whom lack the maturity and experience of life, can often bring unknowing cruelty and disdain to a friend or classmate who is known to be what in common law, was called a “bastard”. Indeed, the term is far from endearing and is known in history to have provoked fights, duels and wars. Must Sean be placed in the embarrassing, if not perplexing situation of explaining why his name is different than that of his father’s? Surely, this status is far from being in the child’s best interests.
Considering the existence of such a stigma, the retention by the child of his mother’s name would effectively enhance the detection of the child’s illegitimacy. While this is not a paramount concern now while Sean is at home and not yet in school, it becomes an issue in the near future when the child may become subject to questioning and possible ridicule. We find that the child is deserving of some protection in this regard and we must act accordingly.
The court perceives no apparent detriment from the child bearing the surname of the father, but does feel that some difficulty may be present in the use of the surname of the mother. On balance, the interests of the child must prevail over whatever personal motivations may be harbored by the parents in seeking to have their respective surnames attached to their child. It is the court’s finding, based upon the facts and circumstances presented, that the child’s interests will best be served by his bearing the surname of the father.
Accordingly, it is hereby directed that the birth record of Sean.Michael be amended pursuant to section 543 of the Family Court Act to reflect the name of Sean Michael Willie, and that notification to the Commissioner of Health be sent in accord with such direction on the prescribed form.